STATE of Missouri ex rel. STATE HIGHWAY COMMISSION of Missouri, Respondent,

v.

RAUSCHER CHEVROLET COMPANY, a Corporation, Appellant.

No. 45065.

Supreme Court of Missouri.

Division No. 1.

June 11, 1956.

Rader, Love & Falzone, Clayton, for appellant.

Robert L. Hyder, Bruce A. Ring, Jefferson City, for respondent.

COIL, Commissioner.

■ In this condemnation case Rauscher Chevrolet Company, a corporation, has appealed from a judgment entered on a jury verdict assessing Rauscher's damages at $7,500. The record affirmatively shows that Rauscher claimed damages in excess of $20,000 and adduced evidence to support that claim. The amount in dispute, therefore, is the difference between the amount of the judgment ($7,500) and an amount in excess of $20,000. Therefore, this court has appellate jurisdiction. Mo.Const.1945, Art. V, § 3, V.A.M.S.; State ex rel. Chariton River Drainage Dist. v. Montgomery, Mo., 275 S.W.2d 283, 284 [1].

The instant condemnation petition, filed September 29, 1950, named one Dierl as the defendant-owner of the property involved. On November 6, 1950, Rauscher was substituted as the defendant-owner. On November 8, 1950, the court entered its order of condemnation and appointed commissioners. The commissioners filed their report on December 18, 1950. Both plaintiff and defendant Rauscher filed exceptions. As noted, a jury trial resulted in the $7,500 verdict for Rauscher. The commissioners, however, had theretofore awarded and defendant had been paid $15,000. Consequently, judgment was entered against defendant for the $7,500 excess.

The property in question is at the southeast corner of the intersection of Lindbergh Boulevard and Manchester Road in St. Louis County. The state condemned and appropriated 23 feet off the west side fronting on Lindbergh and 18 feet off the north side fronting on Manchester, in addition to a small triangular tract. Rauscher's evidence was that its damages were at least $20,350. Plaintiff's evidence was that Rauscher's total damage did not exceed $5,000.

The sole question on this appeal is whether the trial court erred in admitting certain testimony. A witness, Paul Collopy, a real estate broker, adduced by Rauscher, testified that defendant's total damages amounted to $20,350. On Collopy's cross-examination, the record shows the following:

"Q. Were you involved in the transaction that took place of that property on October 30 of 1950? A. I did; I sold the property.

"Q. Do you recall who purchased it? A. I don't recall in what name. If you have it there it is right.

"Q. It was Rauscher Chevrolet Company or Rauscher Investment Company, is that correct? A. It could have been.

"Q. Do you recall what was paid for that property at that time?

"Mr. Rader: I object to that, if the Court please. That is highly improper and incompetent.

"The Court: Why?

"Mr. Rader: The jury is not to consider—

"The Court: Actual sales?

"Mr. Ring: This is an actual sale of the property in question, your Honor.

"Mr. Rader: I would like to discuss it up here. (Counsel confer with the Court out of hearing of the jury.)

"The Court: I will overrule the objection. (To reporter): Will you read the question, please? (Reporter reads: Do you recall what was paid for that property at that time?)

"The Court: This was in what month of 1950? A. When the sale was made?

"The Court: Yes; did you say it was October or November? A. I believe that sale was made—do you recall what date?

"Mr. Ring: I believe you stated October, 1950.

"The Court: All right. A. October, 1950? You want the answer to what was paid for the property?

"Mr. Ring: Q. Yes, what was paid for the property in October, 1950? A. Can I qualify my answer?

"Q. First tell me, then we will let you qualify it. A. The price—sale price at that time was $50,500.00 with the understanding that they did not get all their money until after the first of the year. They had to pay interest for a month or two because of some tax situation he had. He wouldn't take all the cash. As soon as my client could it was picked up. I might say this, Mr. Dierl, the owner of the property, lived in California. He came in to Kirkwood. The highway was going to take 23 feet of his property on one side and 18 feet on the other. They were going to put a divider strip in front, he was going to lose the income from his filling station and the restaurant, winter was coming on and he came here to sell the property. I talked to him and he says, 'I am willing to make a sacrifice to sell the property; I don't want to come back any more.' I said, 'If you price it at a bargain I might get you a buyer.' From September 21, I listed the property and on September 28 I had a signed contract with he and the buyer at this price.

"Q. Had you had this property listed at any time prior to this? A. Never before.

"Q. When did you list it the first time? A. September 21st; sold it on September 28th. That is what a good buy it was. He was anxious to sell and get back to California."

It is Rauscher's contention that the evidence as to the price Rauscher paid for the property in October 1950 was inadmissible for two reasons: (1) that the testimony shows that there were "special considerations" which induced the sale and affected the purchase price and (2) that the sale occurred during the pendency of condemnation proceedings. The "special considerations" to which reference is made are the circumstances purportedly causing Dierl to sell at a "sacrifice" or at a "bargain price."

For the reason hereinafter indicated, however, the question of what effect, if any, the statements by Dierl to Collopy as to why and under what circumstances he was willing to sell the property, had upon the admissibility of the testimony that the property was sold in October 1950 for $50,-500, is not properly before us for decision. This, because the record shows that when the question was asked which called for an answer as to the October sale price, defendant's counsel made only a general objection, viz., "That is highly improper and incompetent." The record shows further that there was then a conference at the bench out of the hearing of the jury. What transpired at that bench conference is not reflected in the record. We are

bound by the record and, therefore, must assume that at the time the question was asked and the ruling on the general objection was made, the trial court knew only that the question called for the sale price of the property, sold after the condemnation petition had been filed and before the order of condemnation and the appointment of commissioners. We must likewise assume, of course, that at the time the trial judge had no knowledge of the fact that there were "special considerations" which prompted the owner Dierl to sell the property at a "bargain" or "sacrifice" price. That information was not disclosed until the general objection had been overruled when the witness, after having answered the specific question, stated for the first time the circumstances under which the sale was made. The appellant did not move to strike that testimony on the ground that Collopy's explanatory statements made that evidence inadmissible. Rauscher should have moved to strike the evidence that was, as we shall later demonstrate, relevant and competent at the time the general objection was made, if, as defendant now contends, it became incompetent and inadmissible because of a later development. Defendant, having failed to so proceed, has precluded our determination of the question of whether the evidence was inadmissible by reason of the subsequent testimony of the witness. Davis v. Sedalia Yellow Cab Co., Mo.App., 280 S.W.2d 869, 871 [4]; Malone v. Harlin, 220 Mo.App. 102, 107, 278 S.W. 806, 808 [3].

As we have heretofore indicated, the trial court, by reason of the records in the case on trial, was charged with knowledge that a condemnation petition had been filed and, in that sense, that condemnation proceedings were pending at the time of the October sale; and the trial court knew also that the order of condemnation had not been made and commissioners had not been appointed by the time of the October sale date.

Defendant's general objection could have been sufficient only if the evidence was inadmissible for any purpose. Kansas City v. Thomson, Mo., 208 S.W.2d 216, 220 [3–5]. The exact question for decision is, therefore, whether evidence of the sale price of the involved property sold (to one other than the condemner) during the pendency of condemnation proceedings was admissible for any purpose.

It is the established rule in this state, and generally, that the price an owner paid for property being condemned is admissible as some evidence of its value at the time of appropriation. That rule applies unless circumstances appear which destroy the relevancy or probative value of that otherwise relevant and highly important evidence. For example, the purchase must have been recent and not remote in point of time. Marked changes in conditions or values must not have occurred since the sale. The sale must have been voluntary in the sense that the seller and buyer were each capable and desirous of protecting his interest. The sale must not have been a forced sale, such as a tax or foreclosure sale. City of St. Louis v. Turner, 331 Mo. 834, 843, 55 S.W.2d 942, 945 [3]; City of St. Louis v. Paramount Shoe Mfg. Co., 237 Mo.App. 200, 217, 168 S.W.2d 149, 155 [13, 14]; State ex rel. State Highway Commission of Missouri v. Pope, 228 Mo. App. 888, 897, 74 S.W.2d 265, 270 [15, 16]; State ex rel. Highway Commission v. Malone, Mo.App., 45 S.W.2d 84, 86 [6]; Kansas City & G. R. Co. v. Haake, 331 Mo. 429, 438 [7], 53 S.W.2d 891, 895 [9–12], 84 A.L.R. 1477; Nichols on Eminent Domain, 3d Ed., Vol. 5, § 21.2, pp. 267–269. It would appear, therefore, that the evidence in question was admissible unless the fact alone that a condemnation proceeding was pending at the time of the sale was a circumstance which destroyed the relevancy or probative value of that testimony.

Rauscher contends that the price paid for property during the pendency of a condemnation proceeding is no evidence of the fair market value of that property prior to condemnation because the purchaser is in effect buying a tract of land and a lawsuit. It is true that when Rauscher paid $50,500 for the entire tract, he knew that proceedings were pending which would decrease the size of that tract; he knew that the

state was appropriating 23 feet off one side and 18 feet off the other; and he knew that he, as the owner, had the legal right to claim and receive damages for the portion appropriated and that he had the right to litigate if necessary to establish his damages in a fair and adequate amount. In the sense that Rauscher bought property *subject to a pending condemnation suit* and that, therefore, a claim for damages for the portion to be appropriated thereby accrued to him, it perhaps may be loosely said that Rauscher bought land and a lawsuit. When the facts are analyzed, however, that inaccurate expression does not destroy the relevancy or the value of the testimony in question. What Rauscher bought was the entire property with knowledge that the area was to be reduced in size. But Rauscher also knew that he would be reimbursed for the area appropriated. The fact is, therefore, that the price Rauscher paid for the entire tract might well have been some evidence of the fair market value of the entire tract at the time of appropriation. In other words, Rauscher's claim for reimbursement was necessarily taken into account when he paid a total price for the entire tract. Thus, the fact that Rauscher paid $50,500 for the entire corner, including the part to be appropriated, was some evidence for the consideration of the jury in determining the fair market value of the property at the time of appropriation.

Defendant, to support his position, relies on the case of Yoder v. City of Hutchinson, 171 Kan. 1, 10, 228 P.2d 918, 924 [4]. That case is some authority for defendant's position. There the Kansas court (while recognizing the rule that the sale price of property under ordinary circumstances, and provided that the sale time was not too remote and that it was not a forced sale, was admissible as some evidence of value) held that where, as in the Yoder case, it appeared that what the owner actually purchased was the land plus an assignment of the former owner's right in an appeal that had been taken by the former owner in a condemnation proceeding, there was no sale in the ordinary course of events and such sale price was no evidence of the value of the lands in question.

Defendant also relies on the Illinois case, Pittsburgh, C., C. & St. L. Ry. Co. v. Gage, 286 Ill. 213, 121 N.E. 582. There testimony was admitted of the price a witness had paid for some of the lots which were being condemned, purchased during the pendency of the condemnation proceeding. The court said: "A sale of property pending a proceeding for its condemnation for public uses does not afford a fair measure of value, and is not admissible in evidence." 121 N.E. 586 [12].

We are not persuaded by the Yoder and Gage cases. For the reasons heretofore stated, we hold that the price paid for property, a portion of which is in the process of being condemned (absent some other reason or circumstance not here present) is some evidence of the fair market value of that property at the time of the appropriation.

Defendant points out that the rule in this state is well settled that evidence of what a condemner paid for parcels of property condemned as part of an entire tract, even though entirely similar to the parcel in litigation, is not admissible. Defendant argues that by analogy the price paid by one other than the condemner during the pendency of condemnation proceedings should likewise be inadmissible.

In Kansas City v. Thomson, supra, a case in which evidence of what a condemner paid for similar property involved in the same proceeding was admitted, it was said that sales under such circumstances "are affected by elements which do not enter into similar transactions in the ordinary course of business. They are not voluntary in the sense of sales of land not subject to condemnation. There is present, perhaps on both sides of the sale, an element of coercion. A sale and purchase between condemnee and condemner is more likely to be the result of a compromise to avoid litigation and is therefore not necessarily an accurate standard for determining value and estimating damages." 208 S.W.2d 219. The court in the Thomson case recognized that a rather logical argument against an arbitrary rule excluding such evidence in all events had been advanced by the New

Hampshire court in Eames v. Southern New Hampshire Hydro-Electric Corp., 85 N.H. 379, 159 A. 128. The position of the New Hampshire court is that the admissibility of such evidence should depend upon relevancy and auxiliary policy which are preliminary questions to be determined by the trial court; and that such evidence should not be arbitrarily excluded in all circumstances. The court in Thomson pointed out, however, that the New Hampshire view leads to the trial and determination of a series of collateral matters "not so likely to be involved when proof of bona fide sales of similar property in the usual course of business are offered." 208 S.W. 2d 219. And in Thomson we adhered to the view, theretofore stated in Metropolitan St. R. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860, that the price paid by a condemner to a condemnee-owner of similar property is not admissible on the issue of value and damages.

We concede, as defendant contends, that some of the same considerations which cause the exclusion of evidence of the price paid by a condemner to a condemnee-owner are to an extent applicable to the factual situation in which the purchase is by one other than the condemner. That is to say, to a limited extent, Dierl, the seller, and Rauscher, the buyer, because of the pendency of the condemnation proceedings, were not enagaged in a sale and purchase on an open market unaffected by any collateral consideration to the same extent as they would have been had there been no condemnation proceeding then pending. This court, however, has heretofore ruled adversely to defendant's contention in that respect and has distinguished the case in which the offered evidence is the price paid by a condemner to a condemnee-owner of similar property from the case in which the offered evidence is the price paid by one other than the condemner during the pendency of a condemnation proceeding.

In the case of In re Condemnation of Land in West Part Dist., etc., v. Boruff, 295 Mo. 28, 39, 243 S.W. 167, 169, Kansas City had passed an ordinance condemning certain property consisting of many separate parcels. Thereafter the Mazda Realty Company contracted for the purchase of certain of the lots included in the total area condemned. Some of them apparently were contracted for after the passage of the ordinance and most of the deeds were executed and delivered after the passage of the ordinance; in other words, the purchases were made during the pendency of the condemnation proceedings. At the trial of the issue of damages sustained by the owner of one of the lots, the trial court admitted testimony of the price Mazda had paid for the similar lots it had bought. Pertaining to the objection made and to the admissibility of that testimony, the court said: "The objection was based upon the theory that the land was no longer upon the open market. The theory of the objection is wrong. The land was upon the open market. The owner had the right to sell, and the purchaser the right to buy. The condemnation may or may not have been perfected. The circumstances were all before the jury, and the jury had the right to consider the price, along with the other circumstances, in determining what value it should fix under the law.

"Much stress is placed upon the case of Metropolitan St. Ry. Co. v. Walsh, 197 Mo. 392, 94 S.W. 860. That case rules that where the party seeking condemnation purchased a part of the property desired, the price which it paid was not proper evidence, because of reasons fully stated by Fox, J., in that case. In this case the party seeking condemnation is Kansas City, not the Mazda Realty Company. In the Walsh Case, supra, the party seeking condemnation was the railroad company which had made purchases of parts of the property which it desired for the public use. The rule in Walsh's Case is a correct rule, but has no application to this case. A reading of the reasoning of that case will suffice. The evidence was admissible for what it was worth. The court went far toward protecting the property owners by instruction No. 12, which reads: '* * *.'

"We are not saying that this cautionary instruction would be absolutely required in the general run of cases of this character;

but, in view of the peculiar facts of this case, it at least gave to defendants all to which they were entitled.

"Upon the whole this evidence was (1) properly admitted, and (2) certainly properly safeguarded. The general rule is that prices paid for property in the same district is proper evidence for the consideration of the jury."

If the last cited case should be followed, it is decisive of the question here presented. The court in Boruff apparently believed that the fact that in one case the purchaser was the condemner and in the other was one other than the condemner was sufficient to distinguish the cases. The court in Boruff apparently did not expressly consider the fact that many of the same reasons assigned in Metropolitan St. R. Co. v. Walsh, supra, for the inadmissibility of the evidence when the purchaser is the condemner also exist and are reasons against the admissibility of such testimony when the purchaser is one other than the condemner. We recognize the validity of the analogy defendant makes between the two situations, but we are of the view that the result in Boruff was, nevertheless, correct. Our reason for that conclusion is that the exclusionary rule arbitrarily applied where the condemner is the purchaser, as in Kansas City v. Thomson, supra, and in Metropolitan St. Ry. Co. v. Walsh, supra, should not be extended to other factual situations. This, because the admissibility of the proffered evidence should depend upon whether it tends to aid the triers of fact in arriving at a conclusion on the issue of value and damages and upon the further consideration of whether the particular proffered evidence raises too many collateral questions for determination by the trial court.

In the instant case the fact that the price paid by Rauscher was for property, a portion of which was then being condemned, was for the consideration of the jury as a circumstance to take into account in determining what weight, if any, to give to the price paid by Rauscher in October 1950 in arriving at its ultimate conclusion on the issue of value and damages. We may not say that the evidence of the price Rauscher

paid in October 1950 could not have aided a jury in arriving at a correct conclusion. St. Louis, K. & N. W. Ry. Co. v. Clark, 121 Mo. 169, 185, 25 S.W. 192, 195, 906, 26 L.R.A. 751.

It follows that, under the circumstances of this record, the trial court did not err in admitting the testimony in question and the judgment is, therefore, affirmed.

VAN OSDOL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.