STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Plaintiff-Respondent,

v.

William A. OGLE et al., Mabel Humphrey and Frank B. Humphrey, Defendants-Appellants.

No. 32202.

St. Louis Court of Appeals.

Missouri.

April 19, 1966.

Walter S. Berkman, St. Louis, for defendants-appellants.

Edwin B. Brzezinski, Kirkwood, Robert L. Hyder, Jefferson City, for plaintiff-respondent.

ANDERSON, Judge.

This is a condemnation suit brought by the state at the relation of the State Highway Commission of Missouri, to acquire property for the construction of Interstate Route 55. A portion of defendants' property, located in south St. Louis, was appropriated in this action. Located on said land was a four family flat known as 5500–02 Minnesota Avenue. Defendants' land, upon which this building was situated, contained 5,675 square feet. The taking by the state was on August 13, 1962, the amount being 1,844 square feet off the front of the property. This left defendants a total of 3,831 square feet of land. Inasmuch as a

portion of the building was within the land area appropriated, a temporary demolition easement was also taken and the entire building was removed from the site. The Commissioners appointed by the Court awarded defendants total damages of $21,-500.00. This amount was paid into the registry of the Court. Plaintiff filed exceptions to the award. The matter was thereafter tried to a jury in the Circuit Court resulting in a verdict in the sum of $19,500.00. Judgment in favor of plaintiff was then entered for $2,000, plus interest. The principal amount was the difference between the sum paid into Court by plaintiff, $21,-500.00, which defendants had withdrawn, and the amount awarded by the jury. Interest was also allowed in favor of plaintiff making a total judgment of $2,277.66. Costs were assessed against defendants. From this judgment defendants have appealed.

The only issue presented for the trial court's determination was the issue of just compensation for the taking and damage to defendants' property. The only issue on this appeal is whether the court erred in failing to sustain an objection to a question put to Walter L. Sandner on cross-examination calling for the sale price of the remaining land which sale took place about four months after the taking. Sandner was the real owner of the property; defendants being mere straw parties. The objection was overruled and Sandner in answer to the question stated he sold the remaining land for $2,500.00. On direct examination, he had testified that said land was worth only $750 at the time of taking.

Walter L. Sandner was the first witness for defendants. On direct examination, he testified he was in the real estate business and had been so engaged for thirty-five or thirty-seven years. He gave testimony with respect to his experience in selling property in the area where the property in question was located and identified photographs of said property. He stated he was the owner of the property but for convenience kept title in the name of his sister, Mabel Humphrey and her husband Frank B. Humphrey. He described the property as a four family flat, gave the number of rooms, etc., and stated he had owned it for twenty years or more; that he had no trouble keeping it fully occupied and received around $200 a month in rent for the four apartments. He further testified he had sold other property he had owned in the neighborhood. He described these properties. He also stated he was familiar with other similar pieces of property in the area that had been sold, and had made inquiries from the people who had bought and sold same as to the selling price of each. He then, over objection, gave testimony as to the selling price of each. The following testimony then appears in the transcript:

"Q. Based upon your experience in the real estate business, in buying and selling property, I'll ask you sir, to tell us as of August 13, 1962, what, in your opinion, was the fair and reasonable market value of the Minnesota property before it was taken?

"A. It was worth twenty-four thousand five hundred.

"Q. Now, they left you some thirty-eight hundred feet. I will ask you, sir, what was the fair, reasonable market value of that thirty-eight hundred feet that was left you?

"A. Well, I suppose it was worth about seven hundred fifty dollars.

"Q. That would make your total damages the difference between twenty-four thousand five hundred and seven hundred fifty?

"A. That's right."

Mr. Sandner was cross-examined at some length but the part material to the issue on this appeal relates to the sale by him of the remaining 3,831 square feet. He testified that it was sold in December, 1962,

about four months after the taking. There then appears the following:

"Q. How much did it sell for?

"Mr. Berkman: Just a minute before you answer that, after the taking, and after the improvement comes in, unless it can be shown that it was a fair sale, an arms length sale between the persons who didn't have to buy, I don't think its admissible.

"Mr. Brzezinski: * * * We are talking about what the after value was and I think this is the best evidence of that.

"Mr. Berkman: You can't show how the property has been improved with the Highway Department in front of it.

"The Court: The objection will be overruled.

"Q. (By Mr. Brzezinski) What did you receive for that property, Mr. Sandner?

"A. Twenty-five hundred."

The objection attempts to raise the principal point urged in this Court that the testimony was not admissible because the evidence (later introduced) shows that the sale was not a fair sale at arms length in the open market, because the purchaser was the only person who could have any use for the land and was compelled to buy at an excessive price in order to provide a frontage for his property.

Defendants' next witness was Mr. M. J. Slonim, who was a realtor, real estate consultant, and an appraiser. He had been in that business for approximately forty years. Since his qualification as an expert witness is not questioned, we deem it unnecessary to refer to his testimony with reference to his experience in his business. He stated he appraised the subject property in May, 1962. He used three approaches to value, namely the replacement cost minus depreciation, income approach, and the market value or sales approach; that on the income approach, the market value of the property before the taking was $20,575.00; that by the use of the replacement cost minus depreciation approach, said value was $23,900.00; that on the comparable sales approach, the value before the taking was $23,000.00; that the 3,831 square feet remaining had some value and in his opinion based on his experience, it was worth about $750.00; that in his opinion, the before value was $23,000.00; the after value $750, with damages to defendants resulting from the taking of $22,250.

The witness when asked how he reached the figure $750.00 as the value of the remaining land, stated, "Well, there was no market for it. There was one buyer probably in the whole world for that; therefore, it was a gamble. That buyer might want to abandon the apartment, * * * might not be interested, * * * might be stubborn. When you have one buyer, from an economic standpoint, the property has no value. That buyer may die, and so we try to figure out, and its very difficult, and it is a matter of opinion, based upon your experience, we thought it had some value * * * and I came up with Seven Hundred Fifty Dollars, which we thought was a very fair, generous evaluation as of the time."

On cross-examination, the witness gave the following testimony:

"Q. * * * Mr. Sandner did get twenty-five hundred dollars for this property? A. That's right.

"Q. And yet you say this wouldn't make any difference to you? A. That is not the market value, that is what somebody, one man in the world paid."

He further testified that if he had used his income valuation approach of $20,575.00, and subtracted his after taking valuation of $750.00 from it, he would come up with total damage resulting from the appropriation of $19,825.00, and that if he had sub-

tracted the $2500.00 Mr. Sandner had actually received, the total damage figure would have been $18,075.00.

Arthur A. Schneider testified for the plaintiff. He stated he had been in the real estate business for forty-eight years, and that approximately fifty to sixty percent of his business at the present time was appraising real estate. He was a member of the Institute of Real Estate Appraisers. He further testified that of the three methods of appraising a parcel of property such as the property here in question, the best and most reliable would be the income approach.

Mr. Stephen F. Thornton testified on behalf of plaintiff. He stated he was a real estate broker and appraiser and had been in business for eighteen years; that he was a member of the Real Estate Board, and the Institute of Real Estate Appraisers; that in his opinion, the fair market value of the subject property prior to the taking was $18,500.00; that in his opinion, the fair market value of the 3,831 square feet remaining was $3,000.00; and that in his opinion the total damage defendants sustained was $15,500.00. He further testified that after the taking, the remaining land was in a very strategic position in that it had a ninety foot frontage on Fassen Street which was the only frontage available to said land, and the only frontage to land back of it which was similarly cut off (from Minnesota Avenue) by the taking.

On cross-examination, the witness stated that there was certainly more than one possible buyer for the land remaining after the taking; that said land was an excellent investment, which could be joined with the other cut off parcels to make three excellent building lots; that one would have to take the chance that the man next door would not want to buy it; that the other tracts are to the south; that there are potential customers other than the owner next to it; that he himself would have bought it for an investment; that obtaining the land next to it was a chance he would have taken; that in determining the fair market value he

felt the owners of the three parcels involved would certainly get together and pool their interests and create three first class south St. Louis vacant building lots; that fair market value is purely a matter of what someone will pay; that any investor would have paid three thousand dollars for the land. The witness further testified:

"Q. Suppose your plans had fallen through and the people next door decided they didn't want the piece of property and the adjoining landowner didn't want it, then it has no value. Is that right? * * * then this isn't a good investment, is it? It's no good to anybody because you can't build on it, isn't that true?

"A. It would not be a good investment, no."

Mr. William S. Garton was called as a witness for plaintiff. He testified he had been in the general real estate business for thirty-five years and had done appraisal work for almost twenty-five years. He had appraised all types of property including four family flats in south St. Louis. He described the property in question as follows: "The property was situated on the southeast corner of Fassen Street and Minnesota Avenue. It rested on a lot forty feet some inches wide by a depth of a hundred forty feet to an alley. The lot was about three feet above the grade of Minnesota Avenue. The improvements were a four family flat, two stories, stone foundation, flat roof; it has two open vestibules, front entrances, and two open porches in the rear; the units consisted of three rooms and bath, pine floors and trim, full basement, and four separate gravid furnaces. * * * No garages." The witness further testified that in his opinion the fair market value of the property as of August 13, 1962, was nineteen thousand dollars. He further testified that "the taking was the front part of the land * * * which is about forty feet five inches wide and I believe a depth of fifty feet, a little irregular in shape; and in the taking, of course,

the building had to be taken, too. The remainder was the rear part of the lot about ninety feet of Fassen Street and with a depth of a little over forty feet."

The witness further testified: "In my appraisal to the State Highway Department, I estimated that as a separate parcel of land it had very limited value. In the rear of the subject remainder there were several pieces of smaller property that had limited value. They were shut. There were no street frontages. I thought that if this land was assembled, if pieces were assembled with the subject property, the subject property would be the key to a very nice building site; that it would have a value of twenty-five hundred dollars or two thousand two hundred fifty dollars."

The witness further stated that at the time he placed the foregoing valuation on the remainder he was not aware that Mr. Sandner had sold the property for twenty-five hundred dollars. In the opinion of the witness, the total damage was sixteen thousand seven hundred and fifty dollars.

On cross-examination, Mr. Garton testified that the land has limited value as a single piece of property, but did have a market value. There were small pieces of land adjoining in the rear that had no value. They were just small pieces of property, irregular shaped, and by assembling them with Sandner's land there would result an ideal triangular building site with the base of the triangle forty feet on Fassen Street. He further testified that any real estate man could have assembled those pieces and created a nice building site.

Defendants contend it was error for the trial court to overrule their objection to the question directed to Sandner, the real owner of the premises, calling upon him to disclose the amount he received from the sale of the property remaining after the appropriation in this proceeding. Said area contained 3,831 square feet, and was sold about four months after the taking. In answer to the question, Sandner stated he received twenty-five hundred dollars for said land.

In support of this contention, it is urged that since the sale was made to the only person who could use this land, and who under compulsion, purchased same at an excessive price in order to provide frontage for his land, said sale or purchase was not a fair sale in the open market and, for that reason, the testimony as to the amount received from the sale was not competent evidence of the market value of said land as of the date of the taking.

■ It is accepted law that when land is taken in the exercise of eminent domain, evidence of the purchase price is competent evidence of the market value of the land as of the time of taking, provided the purchase was voluntary in the sense that the seller and buyer were each capable and desirous of protecting his interest. There is a further qualification that the purchase be not so remote in point of time that interviewing conditions have arisen which deprive such evidence of its natural probative effect or have rendered it of questionable value. State ex rel. State Highway Commission v. Rauscher Chevrolet Company, Mo., 291 S.W.2d 89, 55 A.L.R.2d 773; State ex rel. State Highway Commission v. Schutte Investment Company, Mo., 334 S. W.2d 241. Logically, the same rules should apply where there is resale of property after a part has been appropriated in such a proceeding. There, of course, may be situations where evidence of such sale price would not be competent. The condition of the property might have so changed, or economic conditions affecting values might be so different as to render testimony of the resale price of no probative effect as evidence of value as of the time of taking. But whether the tests of admissibility have been substantially met, rest to a large extent in the sound discretion of the trial court. Nevertheless, evidence which is legally competent, relevant and material on the issue of market value is admissible, and should not be excluded; and unless the evidence is wholly lacking in probative

value, the weight to be given it, including remoteness and change of circumstances from the date of taking to the date of sale, is for the jury under appropriate instructions.

■ It is further well established by the case law of this state that whether the court erred in admitting such evidence must be reviewed in the light of the circumstances existing at the time the ruling was made. State ex rel. State Highway Commission v. Henderson et al., Mo.App., 381 S.W.2d 10; State ex rel. State Highway Commission v. Rauscher Chevrolet Company, Mo., 291 S.W.2d 89; Davis v. Sedalia Yellow Cab Company, Mo.App., 280 S.W.2d 869; Malone v. Harlin, 220 Mo.App. 102, 278 S.W. 806.

In the Henderson case we said: "In the second place, the propriety of a trial judge's ruling on the admissibility of evidence must be reviewed in the light of the circumstances existing at the time the ruling was made. If evidence is apparently competent and relevant on its face when offered, the trial judge must admit it; and he is not to be convicted of error in doing so if a showing is afterwards made that, for some reason not previously disclosed or discernible, the evidence is actually improper. It is not demanded of a trial judge that he possess the quality of prescience. And when such a subsequent showing is made and the objectionable aspect of the evidence is thereby brought to light, the party who originally objected to it has the opportunity, and it becomes his duty, to renew his objection to it and to move to strike it; and his failure to do so will constitute a waiver of his objection. Markow v. Gross-O'Reilly Chandelier Co., Mo.App., 190 S.W. 624, 627; State ex rel. State Highway Commission v.

Rauscher Chevrolet Company, supra, 291 S.W.2d 92."

■ In this case when Mr. Sandner was asked to state the price he received for the land there was nothing in the record to indicate it had appreciated in value since the appropriation or that conditions had changed so materially that the selling price could no longer be regarded as some evidence of its market value as of August 13, 1962. Nor was there anything in the record to indicate that the sale was other than a voluntary sale in the open market, or that the purchaser was, under the circumstances, forced to pay a sum in excess of the fair market value of the property, which would deprive the testimony of its quality as "some evidence" of its value at the time of the appropriation. The evidence which defendants contend robbed it of this quality came later, and if defendants thought that in the light of that evidence a sufficient showing had been made which deprived the previous testimony of all evidentiary value, it was their duty to call the court's attention to the matter and move to strike the previous testimony on the ground that it had, by reason of the subsequent testimony, become incompetent and inadmissible. Having failed to do this, defendants may not on this appeal complain of the action of the trial court in overruling their objection to the admission of the testimony which they now claim was incompetent. State ex rel. State Highway Commission v. Henderson, supra; State ex rel. State Highway Commission v. Rauscher Chevrolet Company, Mo., 291 S.W.2d 89; the point urged here was not properly preserved for review. For that reason, the judgment is affirmed.

WOLFE, P. J., and RUDDY, J., concur.