**STATE of Missouri ex rel. STATE HIGH-WAY COMMISSION of Missouri, Plaintiff-Appellant,**

**v.**

**Leroy P. LANGLEY et al., Exceptions of Ray L. Batman et al., Defendants-Appellants.**

**No. 52425.**

Supreme Court of Missouri, Division No. 1.

Dec. 11, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Jan. 8, 1968.

Robert L. Hyder, Chief Counsel, Earl H. Schrader, Jr., Darold W. Jenkins, Asst. Counsel, Kansas City, for plaintiff-appellant.

Rufus Burrus, Independence, for defendants-appellants.

HIGGINS, Commissioner.

Action in condemnation to secure easements and property rights necessary to location and construction of Interstate Route I-70 in Jackson County, Missouri. The landowners, defendants Batman, et al., excepted from the commissioners' award and both plaintiff and defendants appeal from the ensuing jury verdict and judgment of $13,000.

The landowners had evidence of damages ranging up to $25,000 which is more than $15,000 in excess of the $7,500 to $8,850 to which the commission's evidence indicates the landowners to be entitled. State ex rel. State Highway Commission v. Kendrick, Mo., 383 S.W.2d 740, 743 [3].

Defendants' land from which plaintiff's appropriation was made was an 80-acre

tract lying about a quater mile northeast of Blue Springs, Missouri, and about sixteen miles east of Kansas City, Missouri. Its east side fronted for a quarter mile on Adams Dairy Road, a north and south hard-surfaced county road. The property was also situated a quarter mile north of R. D. Mize Road and a quarter mile south of Duncan Road, both east and west hard-surfaced county roads. Improvements consisted of a two-story frame house, barn, hog houses, chicken houses, and sheds. It was fenced on the perimeter, cross-fenced, and used as a cattle and grain farm.

The appropriation was made January 28, 1960, and was a taking of 19.128 acres in a rectangle 300 feet wide and 2,675.9 feet long, running east and west near the center of the 80-acre tract. After the taking 33 acres of the original tract remained north of the right of way and 28 acres remained south of the right of way. None of the buildings were taken; they remained on the north portion of the remainder. Access from the south remainder was fully appropriated and limited; an outer roadway was provided along the north remainder between Missouri Highway No. 7 on the west and Adams Dairy Road on the east. No underpass was provided for the intersection of Adams Dairy Road and I-70.

Owners' testimony by defendant Ray Batman placed the before-taking value at $60,000, $750 per acre. He testified that the appropriation reduced the before-taking value $24,000 to $25,000, resulting in an after-taking value of $36,000 to $35,000.

Defendants' witness Van Trump set the value before taking at $48,000 to $60,000, and the total damage at $17,500 to $27,500.

Defendants' witness Parr valued the tract at $52,000 before the taking and $28,960 after the taking, a difference of $23,040.

Defendants' witness Eggiman used before and after-taking figures of $54,000 and $32,583.20.

Plaintiff's witness Rule set the before-taking value at $30,150 and the after-taking value at $21,300, a difference of $8,850.

Plaintiff's witness Vanderpool used figures of $28,000 and $20,500, a difference of $7,500.

Upon cross-examination of defendant Ray Batman, plaintiff, over objection, was permitted to adduce testimony from Mr. Batman that he bought the 80 acres in 1959 for $32,500. Colloquy preceded and followed receipt of this testimony, most of which involved defendants' theory of objection that the sale was not competent evidence because it was a "forced sale." The court overruled the objection and, in the course of the colloquy, informed the jury of a stipulation between the parties "that the property which is the subject of this taking was purchased by the defendants, in this case Mr. and Mrs. Batman, as reflected in the file of the court, Probate Court of Jackson County, Missouri, Estate No. 11084, in the matter of the Estate of Ethel May Peterson, deceased. That on August 5, 1959, the Probate Judge of Jackson County ordered the real estate to be sold at a private sale, in order that the obligations of the estate might be paid, and that the property was sold pursuant to that order to Mr. and Mrs. Batman for the sum of $32,500 on September 17, 1959, and that a title was received by the administrator's deed."

Defendants' point is that the court "erred in admitting the sale price ($32,500) * * because it was at a forced sale to pay debts of the estate of the decedent and was not a sale by one 'willing but not obligated to sell it, and is bought by one willing or desirous to purchase it but who is not compelled to do so' as was set out in Instruction No. 3, and such testimony was prejudicial, harmful and resulted in an adverse verdict of the jury of an amount greatly less than the amount to which the land owners were entitled."

█ "It is the established rule in this state, and generally, that the price an owner

paid for property being condemned is admissible as some evidence of its value at the time of appropriation. That rule applies unless circumstances appear which destroy the relevancy or probative value of that otherwise relevant and highly important evidence. For example, the purchase must have been recent and not remote in point of time. Marked changes in conditions or values must not have occurred since the sale. The sale must have been voluntary in the sense that the seller and buyer were each capable and desirous of protecting his interest. The sale must not have been a forced sale, such as a tax or foreclosure sale." State ex rel. State Highway Commission v. Rauscher Chevrolet Co., Mo., 291 S.W.2d 89, 92 [4], 55 A.L.R.2d 773. See also MAI 15.01 defining "fair market value"; Kirst v. Clarkson Const. Co., Mo.App., 395 S.W.2d 487, 496–497 [13]; State ex rel. State Highway Commission v. Ogle, Mo. App., 402 S.W.2d 605, 610 [1–3]; and see Nichols on Eminent Domain, 3rd Ed., Vol. 5, § 21.2, pp. 413–414, where the conditions to be satisfied for admission of the price paid for property subject to appropriation are expressed: ·

"(a) The sale must be bona fide;

"(b) The sale must be voluntary, not forced;

"(c) The sale must have occurred relevantly in point of time; and

"(d) The sale must cover substantially the same property which is the subject of the appropriation action."

Examples of "forced sales" in addition to tax and foreclosure sales, and of other circumstances which destroy the relevancy or probative value of the otherwise relevant evidence in the price an owner paid for property being condemned may be found in Kansas City & G. Ry. Co. v. Haake, 331 Mo. 429, 53 S.W.2d 891, 895 [9], sales under deeds of trust or executions, and 894 [5], assessed valuation by public official not participated in by the landowner; State ex rel. Kansas City P & L Co. v. Salmark, Mo., 350 S.W.2d 771, 772 [1], amounts paid by the condemning party to other owners for other condemned property.

Defendants argue that the purchase by defendant Batman in the probate court sale was a forced sale and within the exceptions to admissibility noted in State Highway Commission v. Rauscher Chevrolet Co., supra.

The landowner, Mr. Batman, testified that immediately prior to the appropriation on January 28, 1960, his 80-acre tract was worth $60,000. He acquired the 80 acres, from which 19.128 acres were taken, at the probate court sale in August 1959 (administrator's deed is dated September 17, 1959), less than six months prior to the taking, and he made no improvements or changes to the tract between acquisition and condemnation. Thus, the requirements of relevancy in point of time and of covering substantially the same property are shown to have been met. Mr. Batman testified also that, even though the sale was a private sale in the probate court, it was conducted as an auction at which there were bidders other than he; the court supervised the sale; he was the highest bidder; he considered the land "worth the money"; the sale was fair as opposed to any consideration that he "stole the land"; and there is no contention of bad faith on either side. Such circumstances prove the sale was bona fide in that it was made "in or with good faith; honestly, openly, and sincerely; without deceit or fraud." Black's Law Dictionary, 4th Ed., p. 223.

Missouri courts have not considered the specific question whether a probate sale is in the nature of a "forced sale"; however, the question has been answered in Redevelopment Agency of City of Santa Monica v. Zwerman, 240 Cal.App.2d 70, 49 Cal. Rptr. 443, and the reasoning of that case is adopted in denying defendants' contention here. "Apart from the statement, made without discussion of reasons, by a divided

court in * * * (State v. Styner (1937) 58 Idaho 233, 72 P.2d 699), and an ambiguous statement in Nichols on Eminent Domain (3rd Ed., § 21.32 pp. 463–465, we are cited to no authority holding that a probate sale is, per se, noncomparable; nor has our own research found any such authority.

"On principle we can see no reason to exclude probate sales in arriving at an opinion as to value. * * *

"The law has regularly excluded reliance on true 'forced sales' such as those under execution, or under foreclosure (citing, among others, Kansas City & G. Ry. Co. v. Haake, supra, and State Highway Commission v. Rauscher Chevrolet Co., supra), but such sales involve the element not only of some haste, but of a compulsion on the part of the property owner to take whatever price is offered by the highest bidder, regardless of its relation to actual value or to the owner's willingness to accept that price. For the same reason, sales at auction, if the sale is 'without reserve' are 'forced' and inadmissible.

"But a probate sale, in this state, has none of these characteristics. They are surrounded by elaborate statutory provisions to insure that the sale price is in accord with the value placed on the property by the inheritance tax appraisers (Prob. Code § 780 et seq.),[1] the probate court being expressly enjoined to see that the sale price 'is not disproportionate to the value' (Prob.Code § 785).[2] It is true that real property may be sold in the course of probate in order to raise cash, either for the payment of claims or to facilitate division of assets among the heirs or beneficiaries. But private sales not infrequently are made for similar reasons. In any case of reliance on a sale alleged to be 'comparable,' the other party may show any special circumstances which render the price atypical. But the fact that the sale was in probate does not, by itself, show that the price obtained was without value in determining the market value of other comparably situated property. Since defendants here object to the use (of the sales) solely because they were in probate, and make no contention that they were prevented from showing anything unusual in connection with those sales, the evidence was properly admitted and used." 49 Cal.Rptr. 1. c. 446–447 [1–6]. See also State ex rel. State Highway Commission v. Schutte Investment Co., Mo., 334 S.W.2d 241, 246 [3], where in condemnation of property occupied by buildings declared uninhabitable by city authorities, record would not sustain owner's contention that sale to it had not been an arm's-length transaction in that the estate could not afford to rehabilitate the property and that accordingly the court erred in admitting evidence of the price paid for the property.

 Mr. Batman was present to protect his interest in acquiring the land at the probate sale; and under the law in the footnotes above the interest of the seller, the Estate of Ethel May Peterson, was required to be protected by the probate court and there is no showing or contention that

---

1. Section 473.503, V.A.M.S., provides: "Before an executor or administrator sells * * * any real estate, * * * unless the order of court directs that he be permitted to use the appraisal filed with the inventory, he shall have it appraised by two disinterested residents of the county in which the land lies." And under Section 473.500, V.A.M.S., "If real property is to be sold at private sale it * * * shall not be sold for less than three-fourths of the appraised value * * *."

2. Section 473.513, V.A.M.S., requires that the administrator or executor report his sale of real estate and that "The court shall examine the report and if satisfied that the sale * * * has been at the price and terms most advantageous to the estate * * *, shall approve the same and order the executor or administrator to make a deed * * *"; and under Section 473.517, "If the report and proceedings of the executor or administrator are not approved by the court, his proceedings shall be void. (And the court) may order a new sale * * *."

the probate court failed of its duty. Thus, this probate sale was not "forced" because it was one in which the interests of both buyer and seller were protected. State Highway Commission v. Rauscher Chevrolet, supra.

During the cross-examination of Mr. Batman he stated that he bought the 80-acre tract "to make a profit on it," and that he and Mrs. Batman on November 6, 1961, conveyed the tract less the 19 acres condemned to Batman Farms Company, a corporation in which he owned "quite a little share of it, but my three kids and thirteen grandkids own a big share of it." Plaintiff then sought to elicit the purchase price paid the Batmans by the Batman Farms Company. Defendants objected on the theory the transaction was a family transaction and therefore not at arm's length. The court first overruled the objection but, after further argument and colloquy, sustained the objection. Plaintiff then asked if Mr. Batman was the major stockholder in the corporation and he admitted he owned the controlling interest and, after a lengthy explanation of the way the corporation acquired the land, he was asked if the corportaion gave him $24,000 worth of stock for the 61 remaining acres, to which he replied, "I imagine it went in there at cost." Plaintiff then offered the deed from Batmans to the corporation for purposes of showing actual consideration and fair market value after the taking of $24,000 represented by $26.40 in revenue stamps and to rebut the description of a family transaction at less than fair market value. The court sustained defendants' objection that the transaction represented by the deed was a family transaction. Plaintiff then made an offer of proof by the deed to show that it contained $26.40 in revenue stamps representing a consideration of $24,000 and that it was material in rebutting Mr. Batman's computation of damages at $24,000 to $25,000, and in supporting plaintiff's evidence of $8,500 damages, i. e., $32,500 purchase price less $8,500 damages, leaving a remainder valued at $24,000. The offer was refused and thereafter Mr. Batman testified that at trial the corporation still owned the land, that nothing had been done to it or taken from it, and that the transfer from Batmans to the corporation was "a legitimate, open, above-board sale." Plaintiff renewed its offer of the deed during the testimony of Mr. Rule in plaintiff's case, plaintiff offering to prove that the deed bore $26.40 in revenue stamps representing a consideration of $24,000 and that since the deed described the original 80 acres less the 19.128 acres taken, it was the identical land and was evaluated after the taking by the landowner himself at $24,000, thereby supporting plaintiff's theory of damages from this witness at $8,500. Defendants renewed their objection on the theory of family transaction and argued further that if the deed was admitted it would require explanation bringing in inadmissible matter, the commissioners' award.

Plaintiff contends that where the landowner paid $32,500 for an 80-acre tract September 17, 1959, and conveyed the remainder without any changes November 6, 1961, by deed containing revenue stamps showing a consideration of $24,000, and then sought to prove that the taking diminished the value of the remainder more than $8,500, evidence of the sale of the remainder by the landowner for $24,000 was material and relevant in rebutting defendants' claim of damages and supporting its own theory of damages. Plaintiff charges the court with error in the refusal of the proffered evidence.

█ Where the landowner in a condemnation action has himself placed a value on the land, such may be shown against him. See St. Louis, O. H. & C. Ry. Co. v. Fowler, 142 Mo. 670, 44 S.W. 771, 772 [1], where the court properly permitted plaintiff to introduce in evidence an assessment list made by the defendant in which the defendant himself placed a value on the land subject of condemnation. Cf. Kansas City & G. Ry. Co. v. Haake, supra, where an assessed

valuation by an officer not participated in by the landowner is inadmissible. " 'If it can be shown (under Missouri law) that the landowner nas himself placed a value on the property in question, whether for taxation or otherwise, or has in some way assented or even acquiesced in fixing the valuation, then such evidence might well be proper on cross-examination and as contradictory of such witness.' " Dubinsky Realty Co. v. Lortz, 8 Cir., 129 F.2d 669, 673–674 [6]. In State Highway Commission v. Ogle, supra, the plaintiff commission appropriated a part of a tract leaving a remainder which the landowner testified was worth $750. Cross-examination elicited that the landowner had sold the remainder prior to trial for $2,500. The ruling permitting the sale price of the remainder to remain in evidence was sustained because "evidence which is legally competent, relevant and material on the issue of market value is admissible, and should not be excluded; and unless the evidence is wholly lacking in probative value, the weight to be given it, including remoteness and change of circumstances from the date of taking to the date of sale, is for the jury under appropriate instructions." 402 S.W.2d l. c. 610–611 [3].

■■ Mr. Batman and his codefendants were attempting to show damages ranging up to $25,000. He paid $32,500 for the tract less than six months before the taking and did nothing to it prior to the taking in January 1960 or to the sale to Batman Farms Company November 6, 1961. The transfer of the tract less the 19 acres taken to Batman Farm Company was by warranty deed containing $26.40 in revenue stamps representing a consideration of $24,000 and, under plaintiff's theory, tended to prove a difference in before and after-taking values of $8,500. Such stamps placed on the deed by the landowner-seller himself were a reliable source of information as to the actual consideration and after-taking value of the property because, even though the expressed consideration (in this case $10) is usually open to inquiry, revenue stamps are "attached pursuant to federal statute, the violation of which is made a crime. With this sanction * * * the amount of revenue stamps attached to the deeds may be said to have been a reliable source of information as to the amount of the consideration paid for the property described therein." Ramming Real Estate Co. v. United States, 8 Cir., 122 F.2d 892, 895 [11, 12].

Under these authorities the amount of revenue stamps on the deed between defendant Batman and the Batman Farms Company was material and relevant on the issue of after-taking market value and computation of damages. Plaintiff's theory of the case would be prejudiced by exclusion of such evidence and it was error, therefore, for the court to do so. Defendants would, of course, be entitled to show any circumstances which render the price thus shown atypical, Redevelopment Agency of City of Santa Monica v. Zwerman, supra; however, it would be their problem in doing so to avoid mention of the commissioners' award, an inadmissible matter.

For the error in refusing the evidence proffered by plaintiff, the judgment is reversed and the cause remanded for retrial.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.