STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION OF MIS-
SOURI, Respondent,

v.

Andrew George KIMMELL, William T.
Grounds and Pauline A. Grounds
et al., Appellants.

No. 53333.

Supreme Court of Missouri,
Division No. 2.

Dec. 9, 1968.

Robert L. Hyder, Chief Counsel, Earl H. Schrader, Jr., Darold W. Jenkins, Asst. Counsel, Kansas City, for plaintiff-respondent.

James G. Trimble, James, McFarland & Trimble, North Kansas City, for appellants.

EAGER, Judge.

This suit is one in condemnation for land taken by the plaintiff for the improvement of U.S. Highway 71. The land of the defendants Grounds was a tract of 24.7 acres just south of the south city limits of Harrisonville on the west side of Highway 71. The tract was generally rectangular, the longer dimensions running east and west, except that a smaller (5 acre) rectangle had been cut out of the northwest corner. Before the taking, the northeast corner of this land "cornered" on Highway 71, and its easterly side or end fronted on County Road No. 2 for a distance of 592.6 feet. Plaintiff appropriated 15.9 acres for the new highway and for the relocation of the county road; it also appropriated 0.18 of an acre for a drainage easement. New Highway 71 became a limited access road, with an overpass constructed to permit the relocated County road to go over it. It is impossible from this record (and in the absence of plats) to describe the precise physical situation before and after the taking. In any event, defendants were left with two tracts of 5.65 acres and 3.15 acres, respectively, separated by the relocated county road, which ran directly through the original tract. The larger tract was on the north side of the road and was irregular in shape; the south tract was triangular. Both had access to the relocated county road. The drainage easement was imposed upon the north tract. The improvement did not involve a full traffic interchange, but traffic going south on the west side of the overpass could enter Highway 71 from a ramp, and traffic going north on the east side could do likewise. Traffic going north could also leave Highway 71 at that intersection.

The points raised here involve the admission and exclusion of evidence. We shall point out the particular evidence and the objections thereto later in the opinion. In general, defendants' evidence was that the tract, before the taking, had a fair market value of from $43,750 to $62,500; that, according to the different witnesses, the two remaining tracts had a fair market value of "very little," $7,200 and $10,000, and that the damage to the defendants was from $36,760 to $52,500. The evidence of the plaintiff was that the before-taking fair market value was $8,650, the value of the remaining tracts was $2,500, and that the total damages were $6,150. The jury awarded defendants $11,620 and they appealed. This land had been rezoned from "agriculture" to "general business," in January or February, 1964. The taking was as of May 1, 1965.

There was testimony concerning sales of several other supposedly comparable tracts, as in the usual condemnation case. Most of the objections were to the hearsay character of the testimony thus given and to the comparable or noncomparable nature of the other tracts so considered; in one instance an objection was made on the basis that the sale was in fact not a "voluntary" sale.

We shall start with our observations, generally, on the admissibility of such evidence in view of the objections which are relied on here. Testimony of the specific prices paid in other sales is hearsay and not admissible if based on information learned from others. State ex rel. State Highway Commission v. Barron, Mo., 400 S.W.2d 33; Missouri Public

Service Co. v. Hunt, Mo.App., 274 S.W.2d 27; McKinney v. Lynch, Mo.App., 45 S.W. 2d 874. We hardly need cite authorities to the effect that a witness may not narrate supposed facts told to him by another, when such evidence is offered to prove the fact thus asserted. 31A C.J.S. Evidence §§ 192, 193. However, an expert testifying on values may base his opinions in part upon his investigation and his inquiries concerning other sales for, in that context, these things merely enter into his general qualifications and experience, and constitute background material. Barron, supra; State ex rel. State Highway Commission v. Bloomfield Tractor Sales, Inc., Mo.App., 381 S.W.2d 20, 23 et seq. In determining whether a collateral sale is one of comparable property and thus admissible, the trial court has a wide discretion. City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839; State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654. In the latter case it is said that unless the differences are such as to make the evidence irrelevant as a matter of law, such dissimilarity should go to the weight of the evidence rather than to its admissibility, 396 S.W.2d loc. cit. 662, leaving the distinctions to be developed further on cross-examination. Evidence of comparable sales must be of sales made when the seller is willing but not obliged to sell, and where the buyer is willing to purchase but is not compelled to do so. In other words, such sales must be "voluntary," as the principle is often stated. MAI 15.01 is based upon our adjudicated cases to this effect and no one here questions the principle.

■■ We shall not consider defendants' points strictly in the order in which they are made. One point is that the Court erred in refusing to strike certain testimony concerning a supposedly comparable sale because the evidence on cross-examination showed that the sale was not voluntary and also that the seller was incompetent. The motion as made at the trial did not raise the question of the seller's competency and we shall disregard that question. In fact, defendants do not really argue that proposition here. Plaintiff's expert witness, Hugh R. Taylor, had testified to the sale of a nearby tract of ten acres from Elmer Jones and his wife to John Little; when he proposed to state the price defendants objected on the ground of hearsay, since he admitted that his information came from Mr. Little. That objection was overruled. Later, in an apparent effort to correct the hearsay objection and ruling, plaintiff put Mr. Little on the stand and he testified directly to the price he had paid. In the course of his cross-examination it was disclosed that the sellers were "around 75," and that they had been living on the place but were not in "good health." When Mr. Little was asked if Mr. Jones "wanted to get out pretty bad," the answer was "I guess he did or he wouldn't have sold" and later, in answer to a similar question, the witness said "I don't know about that. He did want to sell and I bought it * *." This evidence certainly was not sufficient to show that the sale was involuntary or to require the Court to exclude evidence of the sale on that ground; it was vague and insubstantial. Many people may wish to sell property on account of ill health, age, etc., but there must be a showing of other and stronger circumstances to enable a court to hold that such a sale was a forced or involuntary one. The seller may, for instance, have had expert advice on the value of the property and he may have received that price. The point is disallowed. See generally, State ex rel. State Highway Commission v. Dockery, Mo., 340 S.W.2d 689, 693–695.

Defendants' next point is that the Court erred in excluding evidence offered to show a later sale of a tract already considered. That situation arose, in essence, as follows: One of defendants' witnesses, Jim Curd, testified that a nearby eleven-acre tract had been sold in 1962 for $3,300; he had handled the sale himself; the tract had a limited frontage on County Road No. 2, and also a railroad frontage; it was stated by the witness to be a comparable tract.

One Orville Buerge and his wife had bought it. Mr. Curd further testified that Buerge built a fetilizer "plant" on one corner, had a little bulldozing done for a road to the building, and that later six acres of the tract (not including the building) were sold to one Schrock; when the price of the six acres was asked, plaintiff objected on the grounds that the condition of the land was not shown to be the same and that neither the date of the resale nor the source of the witness' information was shown. This objection was sustained. It was then developed that Schrock's purchase was in two different transactions, one in August, 1965, and one in February, 1966; when the witness then testified that Schrock paid $7,500 for three acres in August, 1965, an objection to the testimony was sustained and the jury was instructed to disregard the answer because it was not shown that the three-acre tract was comparable to plaintiff's twenty-five acre tract. Defendants later produced Mr. Schrock as a witness. He testified that he purchased 5.7 acres of the tract, that it was zoned for "heavy industry," that it "bordered" the railroad, and that he bought the land in two different tracts. When asked the price he paid, plaintiff objected on the ground that there had been no adequate foundation laid to establish comparability. Defendants made an extensive offer of proof, calling attention to the fact that there was no similar objection to the prior sale of the eleven-acre tract (including this); in this offer counsel included the proposed evidence that Schrock had paid $17,500 for the 5.7 acres, and stated that the evidence was offered to show an increase in values. After a tentative ruling, some "clarifying" questions developed the fact that Schrock operated a farm implement business, that he received shipments by railroad, that this 5.7 acres had several hundred feet of frontage on the railroad, that the witness had this in mind in making the purchase and that he bought the property with a view to erecting a building for the expansion of his business. At that point an objection was sustained upon the ground that this resale of the 5.7 acres was not a comparable sale. The offer of proof was renewed and denied, and the Court remarked that this evidence might give the jury a "distorted value."

The resale comprised in toto approximately one-half of the eleven-acre tract previously mentioned in evidence. It supposedly had certain specific advantages for Schrock's business; it was bought in two separate transactions. Certain changes had been made in the other part of the eleven-acre tract. The courts are generally rather liberal in admitting evidence of supposedly comparable sales, State ex rel. State Highway Commission v. Koberna, Mo., 396 S.W.2d 654, but nevertheless much discretion is vested in the trial court in this connection. Koberna, supra; City of St. Louis v. Vasquez, Mo., 341 S.W.2d 839. Generally, the ruling of the trial court should be affirmed unless that discretion has been abused. Vasquez, supra. We find no such abuse here, and the contention is denied.

Defendants' remaining point deals with supposed error in the admission of hearsay testimony concerning the sales prices of other tracts. On this defendants complain of the admission of evidence of the prices on three sales. On the sale from Jones to Little of ten acres in 1964 (already referred to) the tract lay more or less directly across Highway 71 from that of the defendants; Mr. Taylor had testified for plaintiff that in his opinion the tract was better than defendants. He, Taylor, had checked the records of that sale, but his only information as to the price had come from Mr. Little. When he was asked for the price, defendants' counsel objected on the ground of hearsay. After a recess the Court overruled the objection and the witness was permitted to testify that the sale price was $7,000 or $700 an acre. This testimony was hearsay and the witness should not have been permitted to so testify. However, Mr. Little himself was subsequently called by the plaintiff and he

testified directly that he had paid $7,000 for the tract. In view of that obviously admissible testimony, we hold that the admission of the hearsay could not have been prejudicial.

▮ In connection with a sale from one Dawson and wife to Kirk and wife in 1960 of 12.8 acres on the east side of Highway 71 a little farther north, Mr. Taylor first compared that tract with defendants' land. Counsel for plaintiff asked Mr. Taylor the price but, upon objection, withdrew the question for further qualifying questions; it was thus developed that Mr. Taylor got his information from a local attorney who had been connected with the transaction, but counsel again asked the sale price. Defendants' objection of hearsay was sustained, "for the time being." At that point the questions and answers moved on to other property. On redirect examination of the same witness (at a point 32 pages later in the transcript) the witness was asked if he had examined the records and the stamps shown on the Jones and Dawson sales; he stated that he had, and he was then asked: "How much was that Kirk sale?" His answer was "$6,500." The next question was: "Was that 12.8 acres?", and the answer was "Yes sir." There was no objection whatever to those questions and no motion to strike the answers. Counsel for plaintiff have noted this lack of objection in their brief, and we necessarily hold that defendants may not now claim the admission of this testimony as reversible error when no objection was made to it. There was no agreement of the parties or announcement by the court considering hearsay objections as made to any future testimony, and we feel that an objection or motion to strike was required here if defendants did not intend to waive the objection. This point is denied.

The last sub-point concerns Taylor's testimony concerning the sale of a 26.25 acre tract in the general vicinity on County Road No. 2, from one Grogger to a Mr. Smith; the comparability of the tracts was dis-cussed. It was developed that the witness had acquired his knowledge of the sales price from Mr. Grogger, the seller, but counsel for plaintiff asked the price and the Court permitted the witness to state, over objection, that the price was "$10,500 or $400.00 an acre." The objection went specifically to the hearsay nature of the testimony and also to the fact that it had not been shown that the land, when viewed by the witness, was in the same condition as it was at the time of the sale. Apparently realizing the inherent danger of the situation, counsel for plaintiff came back to the subject on redirect examination and asked if the witness (as to this and one other tract, as indicated) had examined the records to ascertain the date of sale and the stamps "indicating the price." The witness answered that he had. Then, after questions and answers concerning the Kirk sale, already considered, the following occurred: "And the Grogger to Smith, I asked you about that? A Yes sir, that had revenue stamps of $9.35 indicating a value—MR. TRIMBLE: I object to any testimony as to what it indicated. THE COURT: Overruled. MR. LIVESAY: Q You may answer? A Indicating a price of somewhere between $8000.00 and $8500.00." Plaintiff now asserts that this testimony constituted a sufficient showing of the sale price, and that it rendered the previous hearsay testimony of Mr. Taylor on that tract nonprejudicial. We note first that the amount "indicated" by the stamps was not the same as the hearsay figure previously stated, there being a variance of from $2,000 to $2,500.

The objection could, and perhaps should, have been more specific, but we accept it as conveying to the Court the contention that the revenue stamps were not competent evidence of the price. The witness admitted on cross-examination his familiarity with a practice of placing part of the stamps on a deed before recording and "putting the balance on afterwards" (presumably to effect a lower assessment for tax purposes). Section 4361, Title 26, U.S.C.A. then re-

quired revenue stamps of 55 cents for each $500 or fractional part thereof "(exclusive of the value of any lien or encumbrance remaining thereon at the time of sale)." There was no evidence in this case concerning the existence or nonexistence of a lien or liens on the Grogger tract.

In State ex rel. State Highway Commission v. Langley, Mo., 422 S.W.2d 309, the Court held that a deed, with revenue stamps affixed, had been erroneously excluded when offered as evidence of value. The deed was one executed by a witness who was also the principal defendant in the case and the original owner of the whole tract involved; the grantee was a family corporation; the stamps had been affixed by the owner-defendant. He also testified that the transaction was a "legitimate, open, above-board sale." The deed conveyed all of the tract except that part taken in condemnation. In holding this evidence admissible the Court said in part, loc. cit. 314–315: "Where the landowner in a condemnation action has himself placed a value on the land, such may be shown against him. * * * Such stamps placed on the deed by the landowner-seller himself were a reliable source of information as to the actual consideration and after-taking value of the property because, even though the expressed consideration (in this case $10) is usually open to inquiry, revenue stamps are 'attached pursuant to federal statute, the violation of which is made a crime. * * *'" The Court cited as its only authority the case of Ramming Real Estate Co. v. United States, CA 8, 122 F.2d 892, which opinion cited no authority. In that case, in so far as we can tell, the witness merely used his investigation of the records to constitute a part of his general background information on values, and did not testify independently to any value which revenue stamps showed or "indicated." In Langley, it is probable that the evidence (independent of the stamps) was sufficient to raise an inference of the sale price so as to make the stamp

evidence actually corroboratory. The case is not controlling here because of its differing facts. There the act of the defendant was considered as an admission against interest made by a party; and even though evidence such as this might otherwise be hearsay, when it constitutes an admission against a party's interest the evidence comes within a recognized exception to the hearsay rule. 29 Am.Jur.2d, Evidence, § 496, p. 554.

In our case the evidence proffered by means of the revenue stamps on the Grogger deed could not possibly have constituted an admission against the interest of the present defendants. The sale price "indicated" by the stamps was in substantial conflict with the price previously stated by the witness upon hearsay information. There was no showing of the existence or nonexistence of liens, a matter which would necessarily affect the requirement of stamps, if there were any lien or liens. The crucial question here is whether or not this evidence concerning the revenue stamps *cured* the clear error of admitting a hearsay valuation of the property. We hold that it did not. We need not hold that the evidence was wholly inadmissible, although its admissibility is much less clear than the evidence in Langley, supra. What we do hold is that the hearsay statement of a $10,500 valuation remained unsupported by other substantial evidence, uncorroborated, and that the admission of the hearsay necessarily remained as prejudicial error. And we express a serious doubt as to whether evidence derived from the mere presence of revenue stamps on the deed of a nonparty at the time of recording, unexplained and unsupported by evidence of corroborating circumstances, should constitute substantial evidence of value.

For the error indicated the judgment is reversed and the cause is remanded for further proceedings.

All of the Judges concur.