**W. L. SHOEMAKE et al., Judges of the County Court of St. Francois County, Missouri, and St. Francois County, Missouri, Appellants,**

**v.**

**Raymond J. MURPHY and Antoinette Murphy, Respondents.**

**No. 53649.**

Supreme Court of Missouri, Division No. 1.

Sept. 8, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 13, 1969.

Roberts & Roberts, Raymond R. Roberts, Farmington, for appellants.

Samuel Richeson, Dearing, Richeson, Weier, Roberts & Wegmann, Hillsboro, for respondents.

HENLEY, Chief Justice.

Action by St. Francois County and the Judges of its county court (hereinafter referred to as the County or plaintiffs) to condemn for park and recreational purposes

land owned by defendants. Commissioners assessed defendants' damages for the taking at $51,600. Defendants excepted to this award and the issue of damages was tried before a jury in Jefferson County on a change of venue. The jury assessed defendants' damages at $100,378.00 and judgment was entered in accordance with the verdict. The County's motion for new trial was overruled and it appealed.

Plaintiffs brief nine points, some with sub-points. Of these, seven relate to the admission and exclusion of evidence and one to restrictions on the extent of plaintiffs' inquiry during voir dire examination of veniremen. The last point is that the verdict is excessive, because it was the result of bias and prejudice and alleged trial errors. We reverse and remand for error in the exclusion of evidence offered by plaintiffs relating to certain values placed on the land by defendants.

The land taken consists of approximately one thousand acres lying east of and near U. S. Highway No. 67 a few miles north of the town of Bonne Terre and is part of one thousand forty acres owned by defendants. The approximately forty acres not taken lie west of the highway. The action was commenced July 17, 1964. In the spring of 1963 a group of civic-minded citizens organized a private corporation under the name of St. Francois County State Park Association for the worthy purpose of promoting the establishment of a State Park in the county. The plan was for the Park Association to acquire this and other land with money to be donated by interested citizens and then, pursuant to a prior agreement with the State Park Board, to give and convey it to the State for development by the Board as a State Park. Gifts for this purpose were solicited and the Association raised approximately $51,500. Negotiations by the Association for the purchase of defendants' land were commenced in the spring, 1963, and terminated without success prior to July 17, 1964. A few days before the latter date representatives of the Association met with the County Court,

asked its assistance in acquiring the land by use of the County's power of eminent domain, and made the money collected by the Association available to the County for that purpose. Evidence as to the value of the land ranged from $26,310 to $249,750.

Plaintiffs' main point is that the court erred in excluding their offers to prove that in 1963 and 1964 defendants offered to sell the land to the St. Francois County State Park Association for a certain price. Plaintiffs contend that these offers to sell were for a voluntary sale and, therefore, admissions by defendants as to value and admissible in evidence against them. Defendants contend that the evidence offered by plaintiffs was inadmissible, because the offers to sell were made to the condemnor, or persons representing the condemnor, under threat of condemnation and, therefore, not made for a voluntary sale; that they were offers of compromise to avoid litigation. We summarize the evidence applicable to this point.

Defendant, Raymond Murphy, testified on cross-examination by plaintiffs that the reasonable market value of his whole tract immediately prior to the taking was $250,000; that immediately after taking the remaining forty acres lying west of the highway had a value of $225.00 to $250.00 per acre. Plaintiffs offered to prove by certain named members of a committee representing the Park Association that in April, 1963, and again in May or June, 1963, defendants, upon inquiry by the Committee, offered to sell to the Park Association all land owned by them east of Highway 67 (then consisting of approximately 960 acres) for park purposes for $50,000.00; that sometime immediately following July 25, 1963 (being the date defendants acquired an additional 38.60 acres on the east side of the highway) defendants again offered to sell to the Park Association all land owned by them east of the highway (including the newly acquired 38.60 acres) for $51,500.00; that two members of the Committee told Mr. Murphy that the Park Association would accept his offer and pay the latter

price; that on June 21, 1964, Mr. Murphy met with members of the Committee in an attorney's office in Farmington, Missouri, at which time Mr. Mack Rayfield of the Committee tendered to defendants a check to apply on the purchase price of the land, which Mr. Murphy declined to accept, saying, " * * * before I accept the check I want to check with my tax man first to determine if I want the money now or half now and half next year, don't worry about it * * *;" that later that month Mr. Murphy met again with the Farmington attorney, reaffirmed the sale price of $51,-500.00, but, for the first time, attached some conditions to the sale, the conditions being (1) that the Murphys retain the use of the pasture land until December 31, 1964, and (2) that the Murphys would pay taxes due on the forest crop land. Plaintiffs further offered to prove that none of the members of the Park Association's negotiating committee represented the county or had any authority to act for or on behalf of the county; that during these negotiations there was no mention or discussion of acquisition of the property other than by voluntary sale and purchase at a price to be fixed by the seller, and that no effort was made to persuade the Murphys they should sell because of the "civic nature" of the project; that there was no mention or discussion of even the mere possibility of proceedings to condemn the land.

Plaintiffs stated these offers of proof were for two purposes, viz: (1) to show the value placed on the land by the owners as admissions against interest; and (2) to show, for the purpose of impeachment, prior inconsistent statements by Mr. Murphy. We need not discuss the second purpose of the offer. Defendants objected to these offers on the ground that evidence of the negotiations was inadmissible, because their offers were offers of compromise to avoid litigation. As indicated, the court sustained the objection and denied the offers on the ground stated.

Plaintiffs further offered to prove that in July, 1964, after this suit had been filed by the County, the Murphys wrote two members of the Park Association committee stating that they were ready to sell the land for $51,500.00; that a few days after that letter was received Mr. Murphy went to the office of the Farmington attorney and requested that a deed be prepared and mailed to him for execution. These offers of proof of occurrences after the suit had been filed were made for the same purposes as those related above. They were met with the same objection and received the same ruling.

■ The rule is that offers by the owner to convey for a certain price made to the condemning authority after condemnation proceedings have been instituted are inadmissible for the reason that an offer made to save the expense of further litigation is an offer of compromise and is not a fair test of market value. St. Louis & K. C. Ry. Co. v. Eby, 152 Mo. 606, 54 S.W. 472; Nichols on Eminent Domain, Volume 5, § 21.4(2), page 487. These offers after this suit had been filed, although not made directly to the condemning authority, clearly were offers of compromise to persons who had become proponents of acquisition by condemnation, because at this point the County was using its powers of eminent domain solely for the purposes of the Park Association. The court properly excluded this evidence.

■ However, the court did err in excluding evidence of offers to sell the property for $50,000 and for $51,500 made by defendants to members of a committee representing the Park Association prior to July, 1964. The general rule is that evidence of a value placed on property by the owner is admissible against him as an admission. State ex rel, State Highway Commission of Missouri v. Langley, et al., Mo., 422 S.W.2d 309, 314 [4] and cases there cited; 31A C.J.S. Evidence § 272, p. 703. The rule is also that evidence of an offer made by the owner to sell at a certain price may be treated as an admission and as such is admissible against him, but such offer must have been made for the purpose of a

voluntary sale. An offer by the owner to sell his property for a certain price made to a condemning authority in contemplation of the exercise of the offeree's power of eminent domain is not for the purposes of a voluntary sale and is not admissible as an admission for the reason that it is more likely to have been the result of a compromise to avoid controversy and the expense of litigation and is not, therefore, a fair test of market value. State ex rel. State Highway Commission of Missouri v. Shain, 340 Mo. 802, 102 S.W.2d 666, 668 [3, 4], and see State ex rel. State Highway Commission v. Lindley, et al., 232 Mo.App. 831, 113 S.W.2d 132, 136 [6]; Kansas City v. Thomson, Mo., 208 S.W.2d 216, 219; Chicago, S. F. & C. Railway Co. v. McGrew, 104 Mo. 282, 15 S.W. 931, 935; 18 Am.Jur., Eminent Domain, p. 993, § 349; 31A C.J.S. Evidence § 182(3), p. 472.

The evidence offered by plaintiffs by way of testimony from members of the Park Association and others clearly would meet the test that the owners' offer to sell for a certain price must have been made for the purpose of a voluntary sale. The Park Association's negotiations with defendants for the purchase of the latter's property could not have been under a threat of condemnation by the Association, because the Association, as a private corporation, did not have the power of eminent domain. There is no evidence or suggestion that the County had any interest in acquiring this property prior to July, 1964. In fact, Mr. Murphy testified that he "understood" the County was not "involved;" that " * * * it was just a committee [of the Park Association] that was negotiating." There is no evidence that the Park Association or its members at any time prior to July, 1964, had asked or contemplated asking that the County intervene and assist in acquiring the land, and no evidence that the Association or its members even contemplated that the County would eventually be acting for the Association. There is no evidence that the negotiating committee said anything to imply or from which the Murphys reasonably could infer that condemnation would be resorted to by the County or the State should their negotiations fail. There is no suggestion or contention by defendants that the negotiations between the Park Association and defendants were claimed by the County to be its efforts to agree with the owners upon just compensation as a prerequisite to commencement of this condemnation action. The offers of proof were that there was no mention or discussion of condemnation at any time during the negotiations. We recognize that this suit was instituted by plaintiffs at the request of the Park Association (made in July, 1964) and that in doing so the County is acting to further the purposes of the Association, but that is not to say conclusively that at the time of the negotiations (prior to July, 1964) defendants' offers to sell to the Association for a certain price were not offers made for the purpose of a voluntary sale and, therefore, not admissible as admissions against them. These admissions were competent, but not conclusive, evidence against defendants.

Although the case is to be remanded for retrial, it would serve no useful purpose to discuss and rule the remaining points briefed, because they arise and are presented in a posture peculiar to this trial and are unlikely to arise again. We cannot anticipate what inquiry will be made of veniremen in qualifying a jury for a retrial, or how it will be made; nor can we anticipate what evidence will be offered or how it will be presented; hence, ruling on the remaining points presented on this appeal would be advisory only and, because they probably will not arise again, an exercise in futility.

The judgment is reversed and the cause remanded.

SEILER, P. J., and STORCKMAN, J., concur; HOLMAN, J., not sitting when cause was submitted.