## MEMPHIS HOUSING AUTHORITY

v.

## PEABODY GARAGE COMPANY.

Supreme Court of Tennessee.

Feb 19, 1974.

Melvin Fleischer, Bernie Mullikin, Jr., Cochran, Carey, Fleischer & Mullikin, Memphis, for petitioner.

Charles M. Crump, Apperson, Crump, Duzane & Maxwell, Memphis, for respondent.

## OPINION

McCANLESS, Justice.

The Memphis Housing Authority condemned the respondent's property as part of the Beale Street Urban Renewal Project. Possession was granted to the petitioner on July 12, 1970, after it deposited the sum of $146,500.00 with the clerk of the court. This case involves the admissibility of evidence of a comparable sale of similar property for purposes of aiding the jury in determining whether the respondent Peabody Garage Company was adequately compensated.

The property taken by the petitioner under its power of eminent domain is located at the southwest corner of Church Street and Gayoso Avenue in downtown Memphis. At the trial in the Circuit Court of Shelby County, Division I, petitioner's appraisers valued the property at $145,000.00 and $146,500.00. Respondent's appraisers testified to values of $256,785.00 and $277,065.00. The owner, C. H. Alberding, values the property at $320,000.00. The jury returned a verdict of $175,000.00.

At the trial, repondent sought to introduce into evidence certain sales of other property in the area to be used by the jury for purposes of comparison. Among these "comparables" was the so-called Hull-Dobbs property, which had been sold to the Sheraton-Peabody Hotel for $500,000.00. The two parcels of property are remarkably similar in terms of size, improvements, use, location, and time of purchase. The Hull-Dobbs parcel is 26,229 square feet in size, compared to the 27,706.5 square feet of the subject property. The Hull-Dobbs property is improved with an obsolete two story building, the Peabody Garage property with an obsolete one story building. Both buildings are used for automobile parking, the properties are located across Gayoso Avenue from each other, and both are zoned C-4. The Hull-Dobbs sale was made in August, 1966, and the respondent's property was condemned in August, 1970.

The trial judge excluded testimony of the Hull-Dobbs sale on the ground that it was an expansion sale that would mislead the jury in trying to determine the fair market value of respondent's property. The Court of Appeals, in a unanimous opinion written by Judge Nearn, reversed and remanded for a new trial. We granted certiorari.

The record shows that C. H. Alberding, owner of the subject property, owned and operated the Peabody Hotel Company from 1954 until 1965. During that period, he tried repeatedly to acquire the adjacent property, owned by Hull-Dobbs Realty Company, for use as a motor court or additional parking. Alberding was not successful in his attempts to make that pur-

chase and in December, 1965, his hotel was sold at foreclosure to the Memphis-Sheraton Corporation. The Peabody Hotel then became the Sheraton-Peabody Hotel. Alberding retained ownership of the Peabody Garage, however, and rented it to the Sheraton-Peabody Hotel for $27,000.00 a year for use as parking space for the hotel. The Hull-Dobbs property lies between the Peabody Garage and the hotel, and it is in the same block as the hotel. About six months after the foreclosure sale, the owner of the Hull-Dobbs parcel approached Mr. Martin McNeil, manager of the Sheraton-Peabody Hotel, and offered his property for sale at $600,000.00. Mr. McNeil said he transmitted the offer to his superiors, and that the purchase was eventually made for $500,000.00 in August, 1966.

■■ This Court has long held that evidence of sales of similar property is admissible for valuation purposes in condemnation cases. Lewisburg & N. R. Co. v. Hinds et al., 134 Tenn. 293, 183 S.W. 985 [1915]. As we observed above the Hull-Dobbs and Peabody Garage properties were similar in size, location, use, zoning, improvements, and time of sales. Even though they were alike, however, the comparable sale should not be admitted if the buyer had been compelled to make the purchase. In such a case, the sale would not be useful as a guide to open market value and would tend to mislead the jury. Railroad v. Hinds, supra.

We find no element of compulsion in this case that would make the Hull-Dobbs sale anything other than an open market sale. The factual situation in the case of Railroad v. Hinds, supra, is typical of the kind of compulsion on the parties which would mislead the jury. In that case, Chief Justice Neil wrote:

"While it was not, strictly speaking, a forced sale, yet it does appear that Cooper and wife, who had previously bought the land from one Littleton, after having paid for it one-fourth in cash and the balance on time, had failed to make two payments; had suffered the filing of a bill against them to foreclose the lien; had effected a compromise through which they had reconveyed the land to Littleton, taking back an option to buy within two years thereafter; had sold their option to one Cornish; had found that the latter was unable to make his payments in execution of the option; *and had been compelled to retake the latter,* and it appears that they had but little means. *So it appears that unless they could sell their option to another, they would lose everything they had paid into the land.* . . . (I)t cannot be said that, considering the previous history of the transaction, Cooper and wife were in a position to stand out against the offer made to them by Fort." (Emphasis added.)

In this case, however, Memphis-Sheraton was under no such compulsion to buy the Hull-Dobbs property that it would be forced to accept an artificially inflated price. Testimony at the trial showed that it was the seller, not the buyer, who was anxious to consummate the sale. According to the record, Mr. Hull had moved his business to another location and was anxious to get his estate in order. His original asking price was $750,000.00; he made an offer to the Sheraton of $600,000.00; the final sale price was $500,000.00. The manager of the Sheraton-Peabody Hotel, Mr. McNeil, testified that no discussion of expanding the hotel facilities to include the Hull-Dobbs building had arisen until Mr. Hull made his voluntary offer. Even then, the hotel did not need the property. It had ample parking space at the Peabody Garage, which it was leasing; and had the lease expired, testimony by Mr. McNeil showed that ample parking existed elsewhere in the immediate vicinity to accommodate guests of the hotel. Mr. McNeil testified that the only specific plans Sheraton had for the Peabody Hotel was a two million dollar interior renovation program.

"Q. I will ask you again, Mr. McNeil, at the time you were negotiating with

Mr. Hull in the Summer of '66, did Sheraton have any plans for development of the Hull-Dobbs property if it was purchased?

"A. No, there were no plans developed for this.

"Q. Did you, as the local Manager, feel that it was, that you were under compulsion to buy this property to provide for parking, in view of the other facilities that were available around there?

"A. No, sir."

Furthermore, Mr. McNeil's testimony as to compulsion was not rebutted by the testimony of Mr. William Harris, chief appraiser for the Memphis Housing Authority and petitioner's principal witness. Mr. Harris was asked about his discussions with a loan representative who arranged the financing for the Hull-Dobbs sale:

"Q. Did he say anything that led you to believe that it was other than a fair and open sale?

"A. No, no, no. I don't think there was any compulsion or pressure on anybody in the sale. I'm not trying to say that. I think they—frankly, it is my opinion that when they bought it, they bought it with plans in mind that didn't come to fruition, and I don't think ever will come to fruition."

Mr. Harris also discussed this question with Mr. Frank Goodwin, a representative of Hull-Dobbs, who told Mr. Harris he "knew of no reason why it wasn't a voluntary sale."

■ Not only is there no proof that the hotel could not survive without the Hull-Dobbs property, but the testimony and circumstantial evidence are to the contrary. If survival had been the motivation for the purchase, Sheraton would not have waited until six months after it acquired the hotel to buy the property. Rather than having urgent plans for expanding its parking facilities, Sheraton had no immediate plans

for the Hull-Dobbs property. Instead it concentrated on a two-million dollar interior renovation program which had no connection with the Hull-Dobbs acquisition. We agree that Sheraton made this purchase for purposes of expansion, and that the purchase was both highly desirable and convenient. While these factors may be useful to the jury in determining the weight to be given the Hull-Dobbs transaction as a comparable sale, we hold that an expansion sale is not *per se* inadmissible without an element of compulsion.

"Evidence of comparable sales must be of sales made when the seller is willing but not obliged to sell, and where the buyer is willling to purchase but is not compelled to do so. In other words, such sales must be 'voluntary', . . ." State ex rel. State Highway Commission v. Kimmell, 435 S.W.2d 354 [Mo.1968].

■ The Sheraton was not compelled to buy, and the trial court's decision to the contrary brings us to the rule in Railroad v. Hinds, supra, whereby the admission of comparable sales is said to be in the sound discretion of the trial judge. The Court noted, however, that "the discretion of the trial judge is not unlimited in such matters, but will, in proper cases be reviewed by the appellate court." Railroad v. Hinds, supra. We therefore find an abuse of discretion in this case, which we think resulted from the use of a rule of law different from the one which we set forth today.

The trial court's comments on this issue in the record, and the language in his memorandum opinion which denied respondent's motion for a new trial, are inconsistent. We note particularly the rule upon which the memorandum opinion was based:

"It (the sale) was unquestionably a purchase for future expansion, and *therefore* not an open market sale."

\* \* \* \* \* \*

"From this review of the testimony, the Court is still of the opinion the purchase of the Hull-Dobbs property by the Mem-

phis-Sheraton Corporation was clearly for future expansion purposes and was not an open-market sale, and was therefore properly excluded as a comparable sale for consideration in determining the fair, cash, market value of the subject property." (Emphasis added.)

The rule in Tennessee, which we have clarified above is otherwise, as it requires the element of compulsion, not expansion alone, for inadmissibility.

The Court of Appeals is affirmed.

DYER, C. J., CHATTIN, J., and LEECH, Special Justice, concur.

FONES, J., dissents.

FONES, Justice (dissenting).

The Court has announced what I believe to be a new rule, to wit: that an expansion sale is not, *per se,* inadmissible, without an element of compulsion.

It is conceded that the Hotel owners bought the Hull-Dobbs property for expansion, but it is said, "We find no element of compulsion in this case that would make the Hull-Dobbs sale anything other than an open market sale."

The need for expansion, *per se*, provides some degree of compulsion.

The degree of compulsion in the sale offered as comparable, can best be measured by the difference between the price paid for the Hull-Dobbs property and the price at which a similar property across the street could be bought. The record reflects that Mr. Alberding, the owner of a property similar in zoning, size and improvements, valued his property at $320,000.00 and, we are entitled to assume, would have sold it for that price. $180,000.00 to satisfy the need for expansion represents a significant degree of compulsion, in my opinion.

The trial judge addressed this aspect of the sale as follows:

"Both are in use for the storage of automobiles, and they are located in the same immediate area, yet the two appraisers testifying in behalf of the defendant property owner placed values of $9.00 and $10.00 per square foot, respectively, on the subject property, as against $19.00 per square foot paid for the Hull-Dobbs property. This, in and of itself, would indicate that these appraisers could not have considered the Hull-Dobbs sale an open market sale."

We have heretofore followed the rule giving wide discretion to the trial judge in passing upon the elements of similarity between the proffered comparable and the condemned property, for the purpose of the admissibility of a comparable sale. In Railroad v. Hinds, 134 Tenn. 293, 183 S.W. 985 (1915), this Court quoted the following statement from Lewis on Eminent Domain:

"These are matters . . . with which the trial judge is usually conversant and they must rest largely in his discretion."

This is the rule followed by the overwhelming majority of states. See annotations in 118 A.L.R. 869, and 85 A.L.R.2d 110.

I would not use the phrase, "an element of compulsion", in any part of the definition of comparable sales. It is misleading and its connotation ranges from "any stress of circumstances" to "absolute necessity to buy". The inquiry by the trial judge should be whether or not there is any stress of circumstances that would induce the seller to sacrifice or the buyer to pay a premium for the real estate proffered as a comparable sale. I agree that the mere finding of a dissimilarity or a stress of circumstances should not *per se* render a sale inadmissible. The degree of distortion necessary to render the sale inadmissible, whether from size, zoning, location, use, time of sale or the stress of circumstances surrounding the sale, should

be left to the sound discretion of the trial judge.

The exclusion of the Hull-Dobbs sale is within the bounds of a sound discretion, in my opinion, and I would not disturb the trial judge's ruling.