**CITY OF WASHINGTON, a municipal corporation, Plaintiff-Appellant,**

v.

**Wesley KOCH and Elma Koch, his wife, and Wayne Weiskopf and La Verne Weiskopf, his wife, Defendants-Respondents.**

No. 33487.

St. Louis Court of Appeals, Missouri.

June 12, 1970.

Politte & Poertner, Washington, for plaintiff-appellant.

William D. Kimme, Washington, for defendants-respondents.

WEIER, Commissioner.

The City of Washington instituted a condemnation proceeding to acquire Lot No. 1 of Koch's Subdivision for the purposes of erecting a water tower and drilling a well in order to meet the needs of the city for water supply and proper pressure in its water system. The elevation of the lot was one of the highest in the area. This made it particularly desirable for these purposes. Defendants Koch and Weiskopf were admittedly the owners of the lot, having purchased it on or about July 5, 1967. The petition was filed March 13, 1968. To the report of commissioners awarding damages of $7500.00, plaintiff and defendants filed exceptions. Trial to a jury of the issue of damages produced a jury verdict and judgment fixing damages at $11,000.00. Plaintiff city has appealed, contending primarily that the court erred in admitting evidence to support severance damages.

In order to understand the charges of error alleged to have been committed by the trial court, the facts of geographical location, physical statistics, and ownership of land nearby must be understood. Lot No. 1 of Koch's Subdivision was an irregularly shaped four-sided tract of land with a dimension of 100 feet on the west side, 315.65 feet on the north and 133.66 feet on the east. The plat introduced in evidence showed no footage on the south line, but it appeared to be slightly shorter than the north line. In area it contained .87 acre. Adjoining to the south along its entire boundary line was Lot No. 2 of Koch's Subdivision. This lot was somewhat smaller than Lot 1 but was generally similar to it in configuration. The long lot lines ran east and west. The distance of the north line was not shown by the evidence, but it was the same as the south line of Lot 1. The west line measured 88 feet and the east line 105 feet. Lot 2 was owned by defendants Weiskopf alone.

The entire north side of Lot 1 bordered upon a street named Crestview Drive. The plat did not show its width, but scaling it with a ruler disclosed approximately 50 feet. Beyond Crestview Drive to the north, and directly across from Lot 1, were three lots covering a total area very similar in size and configuration to Lot 1 and described by one witness to contain in all .81 acre. Each of these three lots extended northwardly from Crestview approximately 108 feet, averaged 105 feet each along the street and something more than this footage along the north lines. These three lots were described as Lots 42, 43 and 44 of Koch's Addition. They were owned by the defendants Koch alone.

Mr. and Mrs. Weiskopf had purchased their Lot 2 in 1956. On it they had constructed a contemporary brick and redwood dwelling 72 feet long and 54 feet at its widest point. It was a spacious and attractive house. None of the other lots was improved.

Mr. Koch had filed a subdivision plat in 1966 on land which he had previously acquired. This subdivision was known as Koch's Addition and contained 44 lots. In his plan of development, he had first started improving streets and installing water and sewer lines in the north part of the subdivision. After he had sold lots in the part completed, he had proceeded southwardly with construction and was installing these facilities in the area of Lots 42, 43 and 44 several months before the con-

demnation suit was tried. Lots 1 and 2 of Koch's Subdivision were not a part of Koch's Addition.

Conflict in arriving at the correct measure of damages occurred between the parties early in the trial. When counsel for the landowners made his opening statement, he indicated that their evidence would show damage not only on account of the taking of Lot 1 but also because of separation from Lot 2 belonging to the defendants Weiskopf and Lots 42, 43 and 44, belonging to the defendants Koch. To this statement and evidence, later in the trial, counsel for the City of Washington persistently objected and was overruled. Appellant city then and now contends that the court erred in ruling that Lots 1 and 2 of Koch's Subdivision and Lots 42, 43 and 44 of Koch's Addition were all to be considered a single tract or entity in the determination of damages for the taking of Lot 1. The city asserts this method is objectionable because of several reasons. First, there is no unity of ownership of the lots. Second, there is no unity of use. This places us directly in the area of requirements established by the law which are prerequisite to a claim for severance damages.

■ No one questions the right of a landowner to severance damages where a condemning authority has taken a part of his land and where all of the tract was used for a single purpose such as a farm or other business. But the compensation which the landowner is entitled to receive is generally limited to the tract invaded. If one makes a claim for severance damages alleging ownership of land with respect to which the petition makes no reference, the landowner must prove his ownership of this land and that it is damaged. State ex rel. State Highway Commission v. Esselman, Mo.App., 179 S.W.2d 749, 751[2]. In a situation where the owner of one lot had a minority stock interest in a company which owned another lot, both lots being used by a trucking company in which the owner had a majority interest,

the owner attempted to establish that the two properties were one in so far as their use was concerned. Although the court decided the case on a different issue, it, by way of gratuitous comment, in Kansas City v. Stith, Mo., 409 S.W.2d 193, 197[3], stated: "Solely with the view of preventing possible future misunderstanding, and perhaps as dicta, we note the separate and distinct ownerships of the two tracts and express a grave doubt that a mere unity of *use*, without a unity of ownership (or a single ownership) would support such a claim of special value as is made here and a submission upon any such theory, express or implied." A review of the authorities in other jurisdictions in the annotation entitled "Unity of ownership necessary to allowance of severance damages in eminent domain", 95 A.L.R.2d 887, reveals the general rule to be that where several parcels are claimed as a single tract to establish severance damages, they must be owned by the same party or parties.

■ Obviously there was no unity of ownership in the lots which defendants Koch and Weiskopf insisted on having included with Lot 1 to prove severance or consequential damages. Koch and his wife alone owned lots 42, 43 and 44 of Koch's Addition. Weiskopf and his wife alone owned Lot 2 of Koch's Subdivision. The court therefore committed error when it allowed the jury to consider evidence of severance damages over the objection of plaintiff.

■ Plaintiff also insists that the court erred by its ruling in considering these lots as a unit because there was a lack of unity of use. In this we must also agree. Lots 42, 43 and 44 were part of a subdivision separate from that in which the condemned lot and the Weiskopf lot were located. They were being held by the defendants Koch for "development" and sale with other lots in Koch's Addition. Both Koch and Weiskopf testified they purchased Lot 1 for the purpose of "protection" and developing Lot 1. Obviously

"protection" is not a use mutually common to all the lots which they contended were a single unit. There is no showing that the lots were incorporated in a subdivision with restrictions applicable or facilities common to all of the lots. The only evidence in this respect disclosed that Lot 1 was purchased as a protective buffer or screen for property belonging to the individual defendants. If such can be called a use, it was restricted solely to Lot 1. There is also an absence of any evidence showing an improvement on all lots claimed as a unit for the purpose of sale or other use. So-called "development" of Lot 1 with the other lots was in no wise accomplished at the time of condemnation. It was not incorporated with the other lots in a new or existing development. There was some indication of a plan to develop in the future, but future plans for use are too conjectural to show unity of use on which damages may be based. The unity of use upon which severance damages are to be established must be a present and existing use at the time of condemnation. St. Louis M & S E R Co. v. Aubuchon, 199 Mo. 352, 97 S.W. 867, 873.

The facts here are widely divergent from those in Public Water Supply District No. 2 of Jackson County v. Alex Bascom Co., Mo., 370 S.W.2d 281 285[2], where it was held that the platting of a tract of land into lots would not prevent severance damages to lots not condemned, provided there was no change in physical condition or ownership. Mere paper division, such as subdividing, or division by highway, street or alley does not preclude the lots being considered as a unit for the purpose of assessing damages. In *Bascom* there was no change in development of the lots since they were practically in their original condition in the area of the water storage site. The entire tract was being used as a unit and title to all those lots affected was in the defendant. Such being the evidence, the submission of the issue of severance damages was properly made to the jury. In the case before us, the facts do not show unity of ownership and use so as to justify a submission of this issue.

■ Since this case must be reversed and remanded for the reasons above given, we will not discuss other contentions of appellant, with one exception hereinafter noted. This is for the reason there should not be a repetition of the matters and incidents giving rise to such charges of error on retrial, in view of the elimination of the issue of severance damages. The one exception is the refusal of the court to allow plaintiff to introduce evidence of the price of the condemned lot when it was purchased by the defendants in July of 1967. We will not approach this charge with the thought that the refusal should be tested as error in the trial of the case. We have previously found reversible error in another ruling. If the case is retried, however, we should point out that when land is taken by a condemning authority in the exercise of its right of eminent domain, evidence of its purchase price is competent evidence of the market value of the land as of the time of taking, provided the purchase was voluntary in the sense that the buyer and seller were each capable and desirous of protecting his interest. There is, of course, the further qualification that the purchase be not so remote in time that intervening conditions have arisen which deprive such evidence of its probative effect. State ex rel. State Highway Commission v. Ogle, Mo.App., 402 S.W.2d 605, 610[1]. The sale of Lot 1 was very near the time of taking. Upon a new trial the facts may indicate that its sales price in July of 1967 is competent evidence of its market value at the time of taking approximately nine months later and should be considered by the jury.

For error committed in the respect first above set out, the case is reversed and remanded for a new trial.

PER CURIAM:

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Ac-

cordingly, the case is reversed and remanded for a new trial.

WOLFE, P. J., and BRADY and DOWD, JJ., concur.